UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JODY LYNN JOHNSON,

 Plaintiff,

v.                Case No. 21-CV-1073-SCD

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

 Defendant.

---

## DECISION AND ORDER

---

  Jody Lynn Johnson applied for social security disability benefits based on several physical and mental impairments. After a hearing, an administrative law judge denied Johnson's claim, finding that although she had severe degenerative disc disease, she was still capable of working with certain physical limitations and restrictions. Johnson seeks judicial review of that decision, arguing that the ALJ erred in evaluating her depression, anxiety, and carpal tunnel syndrome. Because the ALJ did not reversibly err in evaluating those impairments, and because substantial evidence otherwise supports the ALJ's decision, I will affirm the denial of disability benefits.

### BACKGROUND

  Johnson was born in 1969 and adopted at birth. R. 169, 309.[1] She graduated high school and attended some college, but she has a limited work history. *See* R. 206–07, 229–32. From 2003 until 2008, Johnson worked a few days a week as a professional dog groomer at a

---

[1] The transcript is filed on the docket at ECF No. 13-2 to ECF No. 13-15.

boarding kennel. In 2008, she got a new job bartending three days a week at a country club. She stopped working there in June 2012 following an anterior fusion of her cervical spine; she hasn't worked or looked for work since then. *See* R. 43–44, 170, 376, 510.

Unfortunately, the surgery did not alleviate Johnson's chronic neck and back pain. She underwent another cervical fusion in November 2015 but continued to have pain post-surgery. *See* R. 375. The following year, Johnson applied for, and the Social Security Administration denied, disability benefits. *See* R. 61. Johnson tried physical therapy, trigger point injections, and bilateral occipital nerve blocks, each with only moderate relief. *See* R. 375, 410. She also managed her pain with various medications, including at times opiates. *See* R. 375–76, 447.

In January 2018, Johnson began complaining to her treatment providers about pain in her left lower arm, wrist, and hand. *See* R. 274. An electromyography (EMG) study later that year revealed carpal tunnel syndrome, and Johnson started physical therapy. Johnson seemed to be making progress with her symptoms and functioning, but she was discharged from physical therapy in May 2019 after she failed to schedule follow-up sessions and return the clinic's phone calls. *See* R. 274–99.

In addition to her physical issues, Johnson suffered from several mental impairments. Providers first diagnosed mixed anxiety and depressive disorder in 2015. *See* R. 496. Johnson was prescribed several psychotropic medications, which seemed to successfully control her mental health symptoms. *See* R. 535–37. Johnson's anxiety symptoms remained inactive throughout 2019, though she did continue to experience some symptoms of depression. *See* R. 306–68.

In January 2020, Johnson applied for supplemental security income from the Social Security Administration. *See* R. 19, 169–78. She alleged disability due to several physical and

mental issues: neck cervical fusion surgery, degenerative disc disease, myofascial pain dysfunction syndrome, musculoskeletal neck pain, thoracic spine pain, post-laminectomy syndrome, bilateral neuralgia, severe arthritis, depression, attention deficit disorder, anxiety, and sleep insomnia. *See* R. 206. Johnson asserted that her impairments significantly affected her daily activities, though she could still cook, perform some household chores, drive, and shop. *See* R. 217–27.

The state agency charged with reviewing the application on behalf of the Social Security Administration denied the claim initially and upon Johnson's request for reconsideration. *See* R. 60–89. Patrick Belson, DO, the reviewing physician at the initial level of review, found that Johnson's carpal tunnel syndrome was not a severe impairment and that Johnson retained the ability to perform light exertional work without any manipulation limitations. R. 65, 67–69, 71. The reviewing physician at the reconsideration level, Abraham Colb, DO, disagreed with both findings. Dr. Colb found carpal tunnel syndrome to be a severe impairment. R. 79. He also found that, given Johnson's neck and upper back pain and carpal tunnel syndrome, she could not reach above 100 degrees and was capable of only occasional highly repetitive manipulations. R. 79, 82–84.

The state agency also evaluated Johnson's mental impairments. Both reviewing psychologists found that Johnson had severe depression and anxiety. R. 65, 79. Elpidio Mariano, MD, the reviewing psychologist at the initial level of review, found that Johnson had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or

3

maintaining pace; and a moderate limitation in adapting or managing herself.[2] R. 65–66. Dr. Mariano found that Johnson would be able to follow and carry out instructions of two or three steps, should avoid complicated instructions of four or more steps during flares of anxiety and depression, and could adjust to occasional changes in tasks. R. 69–71. The reviewing psychologist at the reconsideration level, Therese Harris, PhD, disagreed slightly. Dr. Harris found that Johnson had only a mild limitation in concentrating, persisting, or maintaining pace. R. 80–81. Dr. Harris also found that Johnson could manage no more than mild or routine work-related stress or pressures and was able to manage typical work changes, recognize normal hazards, and adapt to minor changes in work demands. R. 84–86.

After the state-agency denial, an ALJ employed by the Social Security Administration held an evidentiary hearing on Johnson's application. *See* R. 34–59. Johnson testified at the hearing. *See* R. 42–52. At the time, she was living alone and financially supported by her brother. R. 42. She told the ALJ that she was unable to work due to pain, fatigue, weakness, and limited range of motion in her neck and arms. R. 44–46. Johnson stated that she had good days where she's "very productive and can do daily chores," but she estimated she had about three bad days a week where she mostly lay in bed due to total weakness, muscle fatigue, and severe pain. R. 44, 49–51. Johnson further stated that she had difficulty using her arms and hands due to carpal tunnel pain and weakness—she dropped things, got "pins and needles" when using a computer for twenty minutes, and couldn't lift more than ten or fifteen pounds. R. 45–49, 51. Johnson indicated that she typically spent her days completing her home exercises, using her computer or phone, running errands, performing household chores,

---

[2] These four areas of mental functioning are known as the "paragraph B" criteria. The paragraph B criteria are measured on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).

4

making meals, and going grocery shopping. R. 47–48.

A vocational expert also testified at the hearing. *See* R. 52–57. The vocational expert testified that a hypothetical person with Johnson's vocational profile (i.e., fifty-one years old at the time of her application, a high school graduate with some college classes, and minimal work history) could work as an electrical accessories assembler, a cashier, or a hammermill operator if she were limited to a restricted range of light work. R. 53–54. According to the vocational expert, other jobs would be available if the same person were limited to only occasional reaching, handling, and fingering with both arms. R. 54–55. The vocational expert further testified that the hypothetical person would not be able to work if she had to miss work two or more times a month on an ongoing basis or was off task more than fifteen percent of the workday outside normal breaks. R. 55–56.

In March 2021, the ALJ issued a written decision finding that Johnson was not disabled. *See* R. 16–33. The ALJ considered the disability application under 20 C.F.R. § 416.920(a)(4), which sets forth a five-step process for evaluating disability benefits claims. At step one, the ALJ determined that Johnson did not engage in substantial gainful activity since she applied for benefits in January 2020. R. 21. The ALJ determined at step two that Johnson had only one severe impairment, degenerative disc disease. R. 21. The ALJ determined that Johnson's mental impairments of depression and anxiety did not cause more than minimal limitation in her ability to perform basic mental work activities. R. 22–23. Specifically, the ALJ found that Johnson had a mild limitation in each of the four paragraph B criteria. The ALJ determined at step three that Johnson did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively

5

disabling impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 23.

The ALJ next assessed Johnson's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. § 416.945(a). The ALJ determined that Johnson could perform less than the full range of light work. R. 23–24. Specifically, she could never climb ladders, ropes, and scaffolds; she could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; she could occasionally reach overhead with her bilateral upper extremities; she could frequently reach in all other directions with her bilateral upper extremities; and she could frequently handle and finger with her bilateral upper extremities. In assessing that RFC, the ALJ considered Johnson's subjective allegations about her impairments, the medical evidence, and the prior administrative findings. *See* R. 24–27.

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Johnson did not have any past relevant work R. 27. The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Johnson could perform. R. 27–28. Relying on the vocational expert's testimony, the ALJ mentioned three examples: electrical accessories assembler, cashier, and hammermill operator. The ALJ also determined that other jobs were available in significant numbers that Johnson could perform if she were limited to occasional reaching, handling, and fingering.

Based on those findings, the ALJ determined that Johnson was not disabled at any time since she applied for disability benefits. R. 28–29.

The Appeals Council denied Johnson's request for review, *see* R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In September 2021, Johnson filed this action seeking judicial review of the Commissioner's decision denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. United States District Judge Brett H. Ludwig reassigned the matter to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 6, 7, 8. Johnson filed a brief in support of her disability claim, ECF No. 23; Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a brief in support of the ALJ's decision, ECF No. 31; and Johnson filed a reply brief, ECF No. 32.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, I "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate

7

and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Johnson contends the ALJ erred in evaluating her depression, anxiety, and carpal tunnel syndrome.

### I. The ALJ Did Not Reversibly Err in Evaluating Johnson's Depression and Anxiety

Johnson first argues that the ALJ erred in evaluating the severity of her depression and anxiety at step two of the sequential evaluation process. "Procedurally, the ALJ is required to determine at step two . . . whether the claimant in fact has an impairment or combination of impairments that is 'severe.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii); *see also* 20 C.F.R. § 916.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment or combination of impairments that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities" is considered "not severe." 20 C.F.R. § 416.922(a); *see also* Social Security Ruling (SSR) 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, 1985 SSR LEXIS 19, at *8–9 (1985). Examples of basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(b). The

claimant has the burden to prove that an impairment is severe. *Castile*, 617 F.3d at 926 (citing *Zurawski*, 245 F.3d at 885–86).

Substantial evidence supports the ALJ's conclusion that Johnson's depression and anxiety, considered singly and in combination, did not significantly limit her ability to perform basic work activities. The ALJ first considered Johnson's subjective allegations. The ALJ noted that Johnson claimed in her function report that she had difficulty following instructions, she could pay attention for only three to ten minutes at a time, she did not finish what she started, and she had some difficulty handling stress or changes in routine. R. 22 (citing Exhibit 3E). However, the ALJ also noted that Johnson claimed she didn't have any problems with authority figures, and she had never been fired due to problems getting along with others. The ALJ further highlighted that, at the administrative hearing, Johnson did not mention any mental health symptoms or limitations that she thought prevented her from working. R. 22 (citing Hearing Record).

The ALJ also considered the medical evidence. The ALJ noted that Johnson had been diagnosed with depression and anxiety and that she had been prescribed medications to manage her symptoms. R. 22 (citing Exhibits 2F; 6F; 8F). However, according to the ALJ, Johnson presented at most of her medical appointments as alert and oriented, cooperative, with okay to good or appropriate mood or affect, normal behavior, good judgment and insight, logical thought process, intact memory, attention and concentration within normal limits, and appropriate fund of knowledge. R. 22 (citing Exhibits 2F/13, 14, 27, 40, 52, 63; 6F/11; 3F/9, 22, 44, 58, 81, 93, 108; 4F/16, 25, 33, 45; 7F/10; 8F/10; 12F/29; 13F/9; 14F/9, 15, 35, 47, 58, 63, 70, 77, 88). The ALJ also highlighted the observations of Johnson's psychiatrist, who indicated that Johnson was taking her medication as prescribed, Johnson's

9

anxiety and ADD symptoms were at goal, and Johnson's depressive symptoms were not at goal. R. 22 (citing Exhibits 6F/14; 8F/14). The psychiatrist further indicated that, at the time of her appointments in March and June 2020, Johnson had made significant progress minimizing or eliminating her symptoms since the last meeting and had little or no impairment in her functioning.

The ALJ therefore reasonably concluded that Johnson's subjective statements and the objective medical evidence demonstrated that her mental impairments were not severe.

Johnson accuses the ALJ of ignoring the prior administrative medical findings of the reviewing state-agency psychologists when evaluating the severity of her mental impairments at step two. I disagree. The ALJ explicitly discussed those findings and explained why he found them only somewhat persuasive. *See* R. 23 (citing Exhibits 1A; 3A).

Because Johnson applied for disability benefits on or after March 27, 2017, the ALJ applied the new social security regulations for evaluating prior administrative medical findings. *See* R. 24 (citing 20 C.F.R. § 416.920c). Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any . . . prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Rather, the ALJ must consider the persuasiveness of all prior administrative medical findings in the record using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a prior administrative medical finding. *See* 20 C.F.R. § 416.920c(c). Although an ALJ may consider all five factors, the ALJ must explain in her decision how she considered only the supportability and consistency factors. 20 C.F.R. § 416.920c(b).

The ALJ here complied with § 416.920c when evaluating the reviewing state-agency psychologists' findings. The ALJ noted that the record demonstrated that Johnson received some treatment for her mental health conditions during the relevant period. *See* R. 23. However, according to the ALJ, the record demonstrated that Johnson had no more than a mild limitation in each of the four paragraph B criteria; in other words, the reviewing psychologists' findings of moderate limitations in a few functional areas were not consistent with the record. The ALJ supported that conclusion with substantial evidence. Again, the ALJ noted that most of Johnson's mental status examinations were unremarkable; at Johnson's most recent psychiatry appointments, she reported her mood as decent, and her psychiatrist indicated that she was making significant progress and had little or no impairment in her functioning at that time; and Johnson didn't testify to any specific limitations stemming from her mental health or associated symptoms. R. 23 (citing Exhibits 2F/13, 14, 27, 40, 52, 63; 6F/11; 3F/9, 22, 44, 58, 81, 93, 108; 4F/16, 25, 33, 45; 7F/10; 8F/10; 12F/29; 13F/9; 14F/9, 15, 35, 47, 58, 63, 70, 77, 88; 8F/7, 14). The ALJ therefore sufficiently explained why she did not agree with the reviewing psychologists' findings of severe depression and anxiety.

Johnson accuses the ALJ of also ignoring medical evidence supporting severe mental impairments. She points out that her mental health treatment notes date back to March 2019, the treatment notes document a history of anxiety and depressive disorders, she was prescribed several medications for her mental impairments, and she frequently saw a psychiatrist for medication management. The ALJ, however, acknowledged all this evidence in his decision. *See* R. 22–23. Moreover, Johnson does not explain how her diagnoses and treatment compelled the ALJ to find a severe mental impairment. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various

11

conditions of [the claimant's] but their severity."). Indeed, as the ALJ explained, the treatment notes indicated that Johnson's symptoms were well controlled with medication and revealed largely normal findings on exam.

Johnson also criticizes the ALJ for not recognizing that her mental health symptoms worsened in 2020. As support, she notes that, during a June psychiatry appointment, she reported a recent panic attack, she described her mood being "down here and there," and medications were added to her regimen. ECF No. 23 at 6 (quoting R. 735, citing R. 732, 739). But again, the ALJ generally considered the evidence Johnson claims he ignored. *See* R. 22–23. Furthermore, the evidence Johnson cites does not significantly contradict the ALJ's finding of non-severe mental impairments. Although Johnson did report having a recent panic attack at her June 19, 2020 appointment, she described only "mild" generalized anxiety symptoms, her exam was normal, and her psychiatrist assessed little or no impairment in her functioning at that time. *See* R. 731–41. Moreover, Johnson denied recent panic attacks or generalized anxiety symptoms at all her other appointments during the relevant period. *See* R. 306, 320, 332, 344, 356, 652. Likewise, throughout 2019 and 2020—including at the same June 2020 appointment—Johnson described her mood as "okay," "good," or "decent." *See* R. 306, 320, 332, 344, 356, 524, 535, 652, 732. Johnson has failed to demonstrate that one report of panic attacks and a "decent" mood overall compelled the ALJ to find her depression and anxiety significantly limited her ability to do basic mental work activities.

In sum, Johnson has failed to show that the ALJ erred in evaluating the severity of her mental impairments at step two of the sequential evaluation process. The ALJ evaluated Johnson's mental impairments in accordance with the requirements of SSR 85-28 and 20 C.F.R. §§ 416.920(c), 416.920c, and 416.922, and supported her non-severe finding with

12

substantial evidence. The ALJ considered most of the evidence Johnson accuses him of ignoring, and Johnson has failed to demonstrate why the evidence the ALJ didn't explicitly discuss compelled a different result.

Johnson also argues that the ALJ violated 20 C.F.R. § 416.945 and SSR 96-8p by not including any mental limitations or restrictions in the RFC assessment. When assessing a claimant's RFC, the ALJ must consider the limiting effects of all her impairments, even those that are not severe. *See* 20 C.F.R. § 416.945(e); SSR 96-8p, Policy Interpretation Ruling, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, 1996 SSR LEXIS 5, at *14–15 (July 2, 1996). "While a 'not severe' impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 SSR LEXIS 5, at *14–15.

The ALJ here did not err when considering the potential limiting effects of Johnson's mental impairments. The ALJ cited substantial evidence demonstrating that Johnson did not have *any* limitations or restrictions stemming from her mental impairments, whether considered alone or in connection with her physical impairments: Johnson did not testify to any mental limitations or restrictions at the administrative hearing, Johnson's mental status exams were largely unremarkable, and Johnson's psychiatrist consistently indicated that Johnson had little to no impairment in her functioning. Johnson has not cited any significant evidence contrary to that conclusion. *See McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, 2022 U.S. App. LEXIS 3472, at *11 (7th Cir. Feb. 8, 2022) ("Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone.").

13

Moreover, any error in considering the limiting effects of Johnson's non-severe mental impairments was harmless. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (explaining that legal error is harmless if the reviewing court is "convinced that the ALJ would reach the same result on remand"). Johnson has not articulated how her mental impairments impacted her ability to work or explained what additional work restrictions were necessary to account for her mental health symptoms and were supported by the record. *See, e.g.*, *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding alleged error in evaluating the plaintiff's RFC harmless because the plaintiff didn't hypothesize any work restrictions that should have been included). Furthermore, the ALJ alternatively concluded that Johnson could still work if he found her mental impairments to be severe or added non-exertional limitations in the RFC assessment to account for her mental impairments. *See* R. 23. Relying on the vocational expert's testimony, the ALJ determined that restricting Johnson to simple, routine, and repetitive tasks and jobs with simple changes that occur no more than occasionally would not alter his step-five finding. Johnson does not explain how those proffered restrictions fail to account for any limitations her mental impairments cause, whether alone or in combination with her physical impairments.

Accordingly, the ALJ did reversibly err in evaluating Johnson's depression and anxiety.

## II. The ALJ Did Not Reversibly Err in Evaluating Johnson's Carpal Tunnel Syndrome

Johnson argues the ALJ also erred in evaluating her carpal tunnel syndrome. Although Johnson did not allege carpal tunnel syndrome in her disability application, the record reflects she suffered from the impairment since at least 2018. She complained to providers about pain in her left lower arm, wrist, and hand since January 2018; an EMG study from November 2018 revealed carpal tunnel syndrome; and Johnson participated in physical therapy to

14

improve her upper extremity functioning in early 2019. *See* R. 274–99. Likewise, at the administrative hearing, Johnson's lawyer argued that carpal tunnel syndrome was a severe impairment, R. 41, and Johnson told the ALJ that she had difficulty using her arms and hands, *see* R. 45–49, 51. The ALJ discussed Johnson's 2019 physical therapy notes and hearing testimony throughout his decision, *see* R. 24, 27 (citing Hearing Record), R. 25–26 (citing Exhibit 1F), but he never mentioned carpal tunnel syndrome, *see* R. 19–29. This omission, according to Johnson, resulted in two errors, either of which requires reversal: first, the ALJ erred in not finding carpal tunnel syndrome to be a severe impairment at step two of the sequential evaluation process; and second, the ALJ erred in not including any related limitations in the RFC assessment.

Any error at step two with respect to carpal tunnel syndrome was harmless. The ALJ here determined that Johnson had at least one severe impairment (degenerative disc disease) and, therefore, proceeded to the next step of the sequential evaluation process. *See* R. 21–23. Thus, whether the ALJ should have found carpal tunnel syndrome to be a severe impairment "is of no consequence with respect to the outcome of the case." *Castile*, 617 F.3d at 927 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

Furthermore, substantial evidence supports the ALJ's assessment of Johnson's manipulative abilities. The ALJ determined that Johnson could occasionally reach overhead, could frequently reach in all other directions, and could frequently handle and finger with both arms. R. 23–24. In arriving at that finding, the ALJ expressly considered Johnson's testimony that she had limited use of her arms and hands but found that the record did not fully substantiate her subjective allegations of disabling symptoms. The ALJ provided at least three reasons for that finding. First, the ALJ noted Johnson's conservative treatment since her

15

last fusion surgery, including physical therapy, injections, and pain management. R. 26 (citing Exhibits 1F; 3F; 4F; 7F; 12F; 13F; 14F). Second, the ALJ highlighted Johnson's physical examinations, most of which revealed normal range of motion and full strength in both arms. R. 26 (citing Exhibits 3F/93, 108; 7F/10; 12F/29; 13F/9). Third, and finally, the ALJ noted that, despite Johnson's alleged limitations, she lived alone and was able to drive, cook, perform household chores, grocery shop, and do home exercises. R. 26 (citing Hearing Record). The ALJ therefore reasonably concluded that the record did not support further manipulative limitations.

Johnson does not sincerely challenge the ALJ's evaluation of her subjective symptoms or cite any contrary objective medical evidence. Instead, she relies primarily on the prior administrative medical findings of Dr. Colb, the reviewing state-agency physician at the initial level of review. Dr. Colb found carpal tunnel syndrome to be a severe impairment and believed Johnson could not reach above 100 degrees and was capable of only occasional highly repetitive manipulations. R. 79, 82–84.

The ALJ did not err in evaluating Dr. Colb's findings. The ALJ determined Dr. Colb's findings were "somewhat persuasive, particularly the limitation to light exertional work." R. 26. However, the ALJ explicitly rejected Dr. Colb's manipulative findings because they were not well explained and were not supported by the overall record. The ALJ noted that, while Johnson reported limitations in her ability to lift, reach, and use her arms and hands, R. 27 (citing Hearing Record), physical exams revealed normal range of motion and full strength in both arms, R. 27 (citing Exhibits 3F/93, 108; 7F/10; 12F/29; 13F/9). The ALJ further noted that Johnson reported engaging in activities—like household chores, cooking,

grocery shopping, and driving—that involved using her arms and hands. R. 27 (citing Hearing Record).

Johnson does not take issue with any of the reasons the ALJ gave for rejecting Dr. Colb's manipulative findings. Rather, she criticizes the ALJ for discussing those findings only in the context of her degenerative disc disease. According to Johnson, "the manipulative limitations were disregarded without consideration of the added impairment due to carpal tunnel syndrome." ECF No. 23 at 7 (citing R. 26–27). She's right that the ALJ didn't mention that Dr. Colb based his manipulative findings in part on carpal tunnel syndrome. But Johnson does not assert that her carpal tunnel syndrome caused any limitations beyond those assessed by Dr. Colb. Thus, the ALJ's failure to explicitly mention carpal tunnel syndrome or discuss the full context of Dr. Colb's findings was at most harmless error. *See Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020) (finding harmless error where the ALJ thoroughly considered the claimant's back issues but didn't mention one of several back-related diagnoses); *Niemer v. Saul*, No. 19-CV-627, 2020 WL 563943, 2020 U.S. Dist. LEXIS 18773, at *6–7 (E.D. Wis. Feb. 5, 2020) ("So long as the ALJ properly considered all of [the claimant's] alleged disabling symptoms in formulating the RFC, it matters little which impairment the symptoms stemmed from.").

In sum, the ALJ did not reversibly err in evaluating Johnson's carpal tunnel syndrome. Substantial evidence supports the ALJ's assessed manipulative limitations. To the extent the ALJ erred in not finding carpal tunnel syndrome to be a severe impairment, not mentioning carpal tunnel syndrome anywhere in his decision, or not considering the full context of the state-agency findings, those mistakes were harmless.

## CONCLUSION

For all the foregoing reasons, I find that Johnson has not demonstrated that the ALJ committed reversible error in evaluating her depression, anxiety, and carpal tunnel syndrome and that substantial evidence supports the ALJ's decision. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 16th day of September, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge